UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICKEY WOLZ                                CIVIL ACTION

VERSUS                                     NO: 13-5112

BP EXPLORATION AND PRODUCTION,             SECTION: J(2)
INC., ET AL

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 69)** filed by Defendant, BP Exploration & Production, Inc. ("BP"), as well as an *Opposition* (**Rec. Doc. 77)** filed by Plaintiff, Rickey Wolz ("Plaintiff). This motion is set for oral argument on February 25, 2015. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED**.

## PROCEDURAL AND FACTUAL BACKGROUND

This matter arises from injuries allegedly sustained by Plaintiff on August 2, 2012. On the date of the incident, Plaintiff was employed by DXP Enterprises, Inc. ("DXP"), a company which had been hired as an independent contractor by BP to provide services aboard the MAD DOG platform, which was owned and operated by BP. DXP sent Plaintiff to the MAD DOG platform to diagnose and repair a malfunctioning vertical caisson pump ("the pump"), used to pump sea water up to the rig. In anticipation of the examination and

1

repairs of the malfunctioning pump, a chain hoist was attached to the pump, and a nylon strap was tied to the shaft coupling. In order to diagnose the pump's defect, the involved parties devised a plan to use the chain hoist to lift the pump seventy (70) feet out of its outer-caisson piping.

While the parties were in the process of implementing the plan, Plaintiff decided to untie the nylon strap which was attached to the pump. While a rigger was unrigging the chain hoist in an effort to lift the pump, the pump crashed down, onto Plaintiff's hand, which was located directly underneath the pump. Plaintiff alleges that he sustained severe injury to his hand, requiring numerous surgeries.

On July 18, 2013, Plaintiff filed the present lawsuit in this Court. As defendants, Plaintiff initially named BP, as the owner of the platform, and B&S Welding Inc. ("B&S Welding"), as the company who had allegedly employed the rigger. After the Court granted summary judgment in favor of B&S upon a finding that B&S did not employ the rigger performing rigging services on the pump, Plaintiff amended his complaint to name GIS as the employer of the rigger. (Rec. Doc. 32, p. 2). In his complaint, Plaintiff contends that BP's negligence served as the proximate cause of his injuries. Specifically, Plaintiff claims that BP's conduct constituted negligence by failing to provide a reasonably safe place to work, failing to take precautions for Plaintiff's safety, and failing to

2

provide adequate personnel for the job in question, amongst other things. (Rec. Doc. 1, p. 3). BP then filed the instant motion, seeking summary judgment in its favor on Plaintiff's claims, on the basis that it is not liable to Plaintiff under either the independent contractor doctrine or under a theory of independent negligence.

## PARTIES' ARGUMENTS

In its motion, BP contends that no genuine issue exists regarding the fact that it may not be found liable for Plaintiff's injuries. First, BP relies on the independent contractor doctrine for its assertion that as a principal, it is not liable for the negligent acts of Plaintiff, an employee of its independent contractor, DXP. Additionally, BP also argues that it may not be found liable for any alleged independent acts of negligence which Plaintiff alleges contributed to his injuries. BP asserts that it owed Plaintiff no duty to provide a safe work place, and that even if it did owe such a duty, it did not breach this, as it provided Plaintiff with an adequately safe work environment and safe tools to perform his work. Finally, BP maintains that it is not liable for any harm caused by the falling of the pump, because the pump posed an open and obvious "pinch point" of which Plaintiff, as an experienced seaman should have been aware.

In his *Opposition*, Plaintiff does not dispute that he was an independent contractor of BP or that the pinch point posed by the

pump was open and obvious. However, Plaintiff maintains that BP should be found liable for the negligent acts of its site lifting specialists, whom he alleges were directly employed by BP and who developed and approved the lift plan. Plaintiff also asserts that BP owed Plaintiff a duty to exercise reasonable care to ensure his safety, which it breached by allowing Plaintiff to handle the rigging of the pump when he was not one of the certified riggers authorized to do so. Plaintiff also briefly mentions that BP's motion is premature because BP has not produced Marty Colvin, the Person in Charge at the time of the accident, and Martin Sanchez, who participated in the investigation of the incident, both of whom Plaintiff contends are witnesses vital to his case.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in

4

favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish

5

a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

BP contends that summary judgment in its favor is appropriate on Plaintiff's claims, because it may not be found liable either under the independent contractor doctrine or for its alleged acts of independent negligence. In rebuttal, Plaintiff alleges that summary judgment is not appropriate, as a genuine issue remains regarding whether BP may be found liable for the negligent acts of its employees, namely its lift specialists who developed the lift plan and supervised Plaintiff at the time of his accident, as well as BP's independent negligent acts which contributed to Plaintiff's injuries.

As an initial matter, the Court finds that Louisiana law applies to Plaintiff's claims. The MAD DOG platform is located on the Outer Continental Shelf of the Gulf of Mexico, offshore of Louisiana. As such, in accordance with the Outer Continental Shelf Lands Act, Louisiana law governs any disputes arising from incidents which may have occurred aboard the MAD DOG platform.[1]

---

[1]The portion of the Outer Continental Shelf Lands Act regarding choice of law provides in pertinent part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were

**A. Independent Contractor Defense**

BP first asserts that it may not be found liable for the negligent conduct of Plaintiff or his employer, DXP, as DXP was an independent contractor of BP at the time of the accident. Under what BP terms the "independent contractor defense," Louisiana law recognizes that "a principal generally is not liable for any negligent acts committed by its independent contractor in the course of performing its contractual duties." *McCarroll v. BP America Prod. Co.*, No. 10-1834, 2011 WL 4727831, at *2 (E.D. La. Oct. 6, 2011) (Vance, J.) (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987)). However, despite this generality, a principal may be found liable for the acts of its independent contractor if: (1) the independent contractor engages in an ultrahazardous activity; or (2) the principal retains "operational control" over the independent contractor's negligent acts or expressly or impliedly authorizes those acts. *Id* (citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994)).

Plaintiff does not dispute the applicability of the independent contractor defense. Plaintiff also does not contend that he was engaged in an ultrahazardous activity at the time of his injury. Additionally, Plaintiff has failed to provide the Court

---

extended seaward to the outer margin of the outer Continental Shelf
. . .

43 U.S.C. § 1333. Because Louisiana is considered the state adjacent to the MAD DOG platform, the laws of the state of Louisiana provide the relevant law for any dispute arising from this platform.

with any evidence to support a finding that BP exercised operational control or ordered him to handle the rigging which ultimately caused his injury. A principal is considered to exercise operational control "only if it gives an express or implied order to the contractor to engage in an unsafe work practice leading to injury." *Ukudi v. McMoran Oil & Gas, LLC*, 587 F. App'x 119, 122 (5th Cir. 2014). In determining if a principal has exercised such operational control, "the court considers both the contract between the parties and the extent to which the principal actually exercises control." *Id.*

Here, the Master Agreement between BP and DXP clearly provides that DXP will serve as an independent contractor of BP and will control the performance of its work and accept responsibility for its results, whereas BP will not "conduct, control, supervise, or direct the manner or method" in which DXP performs this work." (Rec. Doc. 69-4, p. 2-3). "When the contract assigns the independent contractor responsibility for its own activities, the principal does not retain operational control." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003). Based on the clear language of the contract, it is evident that BP contractually exercised no operational control over Plaintiff's work.

Additionally, Plaintiff has presented no evidence to show that BP exercised any actual control over Plaintiff. "Operational

8

control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to work in his own way." *Fruge*, 337 F.3d at 564. Here, as noted by BP, according to the lift plan drafted by the parties prior to the planned lifting of the pump, Plaintiff was to play no role in the actual lift or the handling of any rigging. (Rec. Doc. 69-1, p. 5). Instead, Plaintiff was simply to provide guidance and instruction regarding the removal and repair of the pump, and no orders, express or otherwise, were given to Plaintiff to become actively engaged with the handling of the pump or its rigging. (Rec. Doc. 69-9, p. 2). Plaintiff has provided the Court with no evidence or factual support to suggest otherwise, and as such, the Court finds that BP did not exercise operational control, either contractually or actually, over Plaintiff.

Plaintiff has failed to submit sufficient evidence to defeat summary judgment on the issue of whether BP may be found liable for Plaintiff's negligent acts that may have contributed to his injuries.

**B. Liability for Lift Supervisors**

While Plaintiff does not dispute that the independent contractor defense precludes a finding of liability against BP for his potentially negligent conduct, he does allege that BP should be found liable for the negligent conduct of two men hired to serve as lifting specialists. Plaintiff notes that Mr. Freddie Greer and Mr.

Brent Broussard, employees of Bishop Lift, both served as site lifting specialists aboard the MAD DOG platform at the time of Plaintiff's accident. Plaintiff alleges that Mr. Greer prepared a lift plan for the pump, which was signed and approved by BP, and which negligently did not include steps on how to remove the rigging of the pump. Additionally, Plaintiff alleges that Mr. Broussard, the lift supervisor on duty at the time of Plaintiff's accident, failed to ensure that only certified riggers, and not Plaintiff, were handling the rigging, and also failed to ensure that only the persons who signed off on the lift plan were performing the lifting.

The law is well-settled within this Circuit that when attempting to defeat a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Instead, when a plaintiff opposing a motion for summary judgment has had a "full opportunity to conduct discovery," he is required to present affirmative evidence that a genuine issue of fact exists. *Anderson*, 477 U.S. at 256. Here, Plaintiff has failed to fulfill his burden regarding his allegations of BP's liability for the acts of Mr. Greer and Mr. Broussard. At the time Plaintiff filed his *Opposition*, he admitted

that he had not deposed Mr. Broussard, but was "diligently working to schedule" such a deposition. As such, Plaintiff relies entirely on the deposition testimony of Mr. Greer in support of his contention that BP should be found liable for the lifting specialists' alleged negligent conduct. Plaintiff filed his *Opposition* on February 18, 2015, one day before discovery in this matter closed. As such, Plaintiff appears to have had a full opportunity to conduct the deposition of Mr. Broussard, and provides the Court with no reasoning for why this deposition has not been conducted. Additionally, Plaintiff alleges that Bishop Lift, the employer of Mr. Greer and Mr. Broussard, is not an independent contractor of BP, but provides no evidence to support this. In the alternative, Plaintiff alleges that even if Bishop Lift is deemed to be an independent contractor of BP, BP exercised operational control over the lifting specialists. However, again Plaintiff provides absolutely no evidence to support this conclusory allegation. Additionally, Plaintiff fails to substantiate his allegations that both Mr. Greer and Mr. Broussard acted negligently in their respective development and implementation of the lifting plan.

Due to the lack of evidentiary support and conclusory nature of Plaintiff's allegations, the Court finds that Plaintiff has failed to satisfy his burden to defeat summary judgment on his claims for BP's liability arising from the conduct of its lifting

specialists.

## C. Independent Negligence

In addition to Plaintiff's argument that BP should be found liable for the acts of its lifting specialists, Plaintiff also asserts that BP should be found liable for its independent acts of negligence which caused or contributed to Plaintiff's injuries. While the general rule shields a principal for liability from the negligent acts of its independent contractors, the principal will remain liable for its own acts of negligence. *Graham*, 21 F.3d at 645; *Cormier v. W & T Offshore, Inc.*, No. 10-1089, 2013 WL 1567406, at *16 (W.D. La. Apr. 12, 2013). Under Louisiana law, in order to succeed on a claim of negligence, a plaintiff must prove "the existence of a legal duty coupled with a breach of that duty," as well as causation and damage. *Friou v. Phillips Petroleum, Co.*, 948 F.2d 972, 975 (5th Cir. 1991) (citing *Seals v. Morris*, 410 So.2d 715, 718 (La. 1981)).

Plaintiff asserts that BP owed a duty to provide Plaintiff and all DXP employees with a safe place to work. BP disputes the existence of this duty, contending that the Master Agreement setting forth the contractual duties of BP and DPX imposed no independent duty on BP "in relation to adequate personnel, equipment and training and supervision of employees." (Rec. Doc. 69-1, p. 16). Under Louisiana law, "whether a duty is owed is a question of law, but whether a defendant breached that duty is a

12

question of fact." *Smith v. Chevron USA, Inc.*, No. 98-2059, 1999 WL 615174, at *3 (E.D. La. Aug. 12, 1999) (Berrigan, J.) (citing *Mundy v. Dept. of Health and Human Res.*, 620 So.2d 811, 813 (La. 1993)). It is well-settled within this Circuit that, "as a general rule, the owner or operator of a facility has a duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994) (quoting *Mundy*, 620 So.2d at 813) (internal citations omitted). Consistent with this duty, owners of offshore platforms owe a duty to employees of their independent contractors to "take reasonable steps to ensure a safe working environment." *Id*; *Smith*, 1999 WL 615174, at *2. In light of this, the mere fact that the Master Agreement did not specifically reference such a duty does not allow BP to escape its legally mandated obligation to provide the employees of independent contractors, such as Plaintiff, with a safe work environment.

Plaintiff does not contend that any part of the MAD DOG platform was unsafe, however, he does claim that BP breached its duties to provide a safe work environment and exercise reasonable care to ensure his safety by both allowing Plaintiff to handle rigging when he was not certified to do so, and also by allegedly failing to implement proper safety procedures. First, considering Plaintiff's allegation that BP allowed him to handle rigging

13

despite his lack of authority to do so, the Court finds this argument to be without merit. Plaintiff has provided this Court, both in his complaint and in his *Opposition* to the instant motion, with minimal detail regarding the events of the incident which allegedly caused Plaintiff's injuries. However, BP has provided the Court with evidence specifically detailing these events, largely in the form of depositions of Plaintiff and fellow workers aboard the MAD DOG platform.

BP does not dispute that according to the lift plan, Plaintiff was not certified to nor was he intended to be involved in the lift of the pump or the handling of any rigging. (Rec. Doc. 69-1, p. 5). Moreover, as mentioned above, the lift plan provided that Plaintiff's only participation in the lifting of the pump be limited to providing guidance, instruction, and expertise regarding the removal and repair of the pump. (Rec. Doc. 69-1, p. 6). BP contends that despite the lift plan strictly limiting Plaintiff's involvement in the lift, Plaintiff, on his own initiative, entered the area surrounding the pump, which was blocked off with red "caution" tape, and began handling the rigging, which ultimately resulted in his injury. Robert Kretzer, the Team Maintenance Leader for BP who was present at the time of the accident, has testified that Plaintiff was never instructed to enter the area or to handle the pump or its rigging, and also that he never informed any BP personnel that he intended to enter the area or assist with the

14

lift. (Rec. Doc. 69-9, p. 2). While Plaintiff contends that there is a factual issue regarding whether anyone knew he intended to assist in removing the rigging, he has failed to provide any evidence to support this contention, either through his own testimony or otherwise. As such, due to Plaintiff's lack of evidentiary support, he has failed to show that BP breached its duty by allegedly allowing him to participate in the handling of the rigging.

Plaintiff also contends that an internal investigation conducted by BP reveals that BP breached its duty by "fail[ing] in many aspects which let [sic] to plaintiff's injury." (Rec. Doc. 77, p. 11). However, in support of this contention, Plaintiff merely lists vague, conclusory allegations, such as "BP personnel failed in their job duties, which led to plaintiff's injuries." (Rec. Doc. 77, p. 12). These allegations are entirely devoid of any factual basis or explanation, and as such are insufficient for a reasonable jury to determine that BP breached its duty in such a manner.

Because Plaintiff is unable to set forth any substantial evidence to show that a genuine issue of fact exists regarding BP's liability, the Court finds that summary judgment in favor of BP on Plaintiffs' claims is warranted.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that BP's *Motion for Summary Judgment*

15

**(Rec. Doc. 69)** is **GRANTED.**

   **IT IS FURTHER ORDERED** that Plaintiff's claims against BP in the above-captioned matter are hereby **DISMISSED WITH PREJUDICE**.

   **IT IS FURTHER ORDERED** that BP's *Motion in Limine to Exclude the Testimony of G. Randolph Rice, Ph.D* (**Rec. Doc. 68**) and *Motion for Leave to File Reply* (**Rec. Doc. 80**) are hereby **DENIED AS MOOT**.

   **IT IS FURTHER ORDERED** that the oral argument scheduled for Wednesday, February 25, 2015 at 9:30 regarding the instant motion and BP's *Motion in Limine* (**Rec. Doc. 68**) are hereby **CANCELLED**.

   New Orleans, Louisiana this 24th day of February, 2015.

CARL J. BARBIER

UNITED STATES DISTRICT JUDGE