UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RICKEY WOLZ                              *  NO: 13-5112
                                         *
VERSUS                                   *  SECTION:  J
                                         *  JUDGE CARL J. BARBIER
BP EXPLORATION & PRODUCTION, INC.        *  MAGISTRATE: 3
AND B & S WELDING, INC.                  *  JUDGE DANIEL E. KNOWLES, III
****************************************************************************

## JOINT PRE-TRIAL ORDER[1]

### I.
### PRE-TRIAL CONFERENCE

A Pre-Trial Conference was held on the 26th day of March 2015 at 2:30 p.m.

### II.
### APPEARANCE OF COUNSEL:

A.      Timothy J. Young
        Tammy D. Harris
        Megan C. Misko
        The Young Firm
        400 Poydras St., Suite 2090
        New Orleans, LA  70130
        Telephone:  504-680-4100
        Facsimile:  504-680-4104
        *Attorneys for plaintiff, Rickey Wolz*

        Robert S. Reich, T.A.
        Daniel E. Levy, Esq.
        Reich, Album & Plunkett, L.L.C.
        3850 N. Causeway Boulevard
        1000 Lakeway Two
        Metairie, LA 70002
        Telephone: (504) 830-3999
        Facsimile: (504) 830-3950
        *Attorneys for Grand Isle Shipyards, Inc.*

---

[1] Defense counsel did not provide final consent prior to the 4:30 filing deadline.

## III.
## DESCRIPTION OF THE PARTIES

**Plaintiff, Rickey Wolz:**

Plaintiff is Rickey Wolz, a resident of Louisiana.

**Defendant, Grand Isle Shipyards, Inc.:**

At all material times, plaintiff was employed by DXP as a specialist assigned to work on BP's MAD DOG Platform. Wesley Rozas and the other GIS employees were borrowed employees of BP. This Court has heretofore found that plaintiff has no claim against BP because he was working as an independent contractor of BP. Likewise, he has no claims against GIS because the GIS employees were, at all material times, borrowed employees of BP. In addition, plaintiff's claims are prescribed and this Court lacks jurisdiction.

## IV.
## JURISDICTION:

**Plaintiff, Rickey Wolz:**

This matter falls within the Court's original jurisdiction under 28 U.S.C. 1331 because it arises under the Outer Continental Shelf Lands Act since it occurred on a fixed platform in the Gulf of Mexico.[2]

**Defendant, Grand Isle Shipyards, Inc.:**

Plaintiff originally alleged jurisdiction on the grounds of diversity of citizenship. There is, however, no diversity, as plaintiff is a Louisiana resident and defendant, GIS, is a Louisiana corporation. By amending the Complaint, plaintiff alleged jurisdiction under the Jones Act and General Maritime Law. Plaintiff is and was not a Jones Act employee, is and was not employed

---

[2] Although it was originally alleged that jurisdiction was based on diversity, the Jones Act, admiralty and general maritime law, it is clear from the facts alleged in the initial Complaint and the First Supplemental and Amending Complaint that this case falls under OSCLA which is federal law. In fact, Your Honor referenced OSCLA in its recently ruling on BP's Motion for Summary Judgment.

by GIS, and therefore has no claim under the Jones Act.  Plaintiff has also alleged jurisdiction under the General Maritime Law; however, the law is clear that the object on which plaintiff was injured is and was not a vessel for purposes of the General Maritime Law.  Accordingly, this Court lacks jurisdiction to hear this matter.

## V.
## PENDING MOTIONS:

**Plaintiff, Rickey Wolz:**

None.

**Defendant, Grand Isle Shipyards, Inc.:**

Defendant has filed a Motion for Summary Judgment.  Defendant anticipates filing additional motions on prescription, lack of jurisdiction, and tort immunity based on the issue of "borrowed employee" status.

Plaintiff intends to oppose all such motions on the merits and in relation to any motion based on "tort immunity based on the issue of 'borrowed employee' status," plaintiff will also oppose such motion as untimely.

## VI.
## BRIEF SUMMARY OF MATERIAL FACTS CLAIMED:

**Plaintiff, Rickey Wolz:**

Ricky Wolz was employed as shop foreman with DXP Enterprises ("DXP").  He sustained a severe crushing injury to his right hand while working on a BP platform, the MAD DOG.  The accident occurred when plaintiff and Wesley Rozas the rigging foreman for Grand Isle Shipyards, Inc. (GIS), were unhooking rigging from a pump which allowed the pump shaft to fall and crush Wolz's right hand.  Wolz is right hand dominant.

DXP manufactured and/or sold a pump that was located on the MAD DOG.  The pump

required servicing and Wolz was sent to the MAD DOG to get the pump and bring it back to DXP.  BP along with GIS, a third party rigging company, provided all rigging services.  Wolz is not a certified or trained rigger and did not have anything to do with rigging related to the pump (or otherwise).  BP and/or GIS rigged up a chain hoist and sling to the pump which was unsuited for the task of removing the pump.  Due to the unsuitable rigging, the GIS rigging forman proceeded to disconnect the chain hoist to make room for a winch line to be rigged up to pull the caisson pump.  Wolz was a deck below him and unhooked a strap from the chain fall.  The pump shaft fell on Wolz's right hand crushing it against a metal pipe.

Wolz was taken to the emergency room at West Jefferson Medical Center.  He was diagnosed with (1) crush injury to the right hand; (2) severe comminuted fracture distal phalanx of the right thumb; (3) open fracture of the ring finger middle phalanx; (3) open fracture of the proximal phalanx of the small finger; (4) a 12 cm laceration dorsum of the hand involving the first web space and the index finger; (5) a 3.5 cm radial thumb laceration; (6) a 1 cm laceration of the ring finger on the volar surface; (7) a 1 cm laceration of the long fingertip;(8) a 2.5 cm laceration of the distal volar thumb; and (9) a 4 cm laceration of the dorsal aspect of the ring finger.  He was immediately taken to the operating room where the wound was explored; a washout of all wounds was done; and pin fixations of the open fractures of the small finger and ring finger along with traction fixation of the fracture of the thumb were all performed.  He was discharged with instructions not to use his right hand for any activity and not to work.  On August 9, 2012, Wolz was told he could work light duty, but with no use of his right hand.  Wolz then underwent physical therapy for 5 months.  On July 17, 2013, Wolz underwent a thumb fusion.  However, the joint did not completely fuse and a second fusion has been recommended.

The pump that is the subject of this suit was going to be removed according to a lift plan developed by Bishop Lift and approved by BP.  The only persons that were to be involved in the lift were those persons that signed off on the lift plan.  GIS rigging foreman, Wesley Rozas was one of those persons.  Plaintiff was not.  Rozas signed off on the lift plan which was only to be signed by those performing steps in the lift plan.  Rozas knew what plaintiff's role was and knew it did not include handling rigging.

Rozas, as the rigging supervisor, should not have allowed plaintiff, who is not a certified rigger, to assist in removing rigging gear.  Every witness deposed, including Rozas, admitted that only certified riggers are to handle rigging gear.  Moreover, Louis Verret, BP's maintenance team lead, testified that if someone was aware that anyone other than a certified rigger was performing any steps of the lift plan, that person should stop work to correct such an unsafe situation.  Rozas testified that he is responsible for the safety of everyone on board; that supervisors like himself should ensure everyone is working safely and that as a group they should all look out for each other; yet he did not bother to exercise his stop work authority when he knew that plaintiff – an uncertified rigger who did not sign off on the lift plan – was handling rigging equipment.

Plaintiff has retained safety expert Bob Borision to address these issues.  In addition, plaintiff retained vocational rehabilitation expert, Dr. Neal Gorman and economist Dr. Randy Rice to address plaintiff's economic losses.  As a result of his injury, plaintiff is no longer able to work overtime.  Further, he has suffered a loss of earning capacity.  Dr. Gorman opined that plaintiff's has a loss of overtime of 800 hours annually at a rate of $49.50/hour.  Based on this, Dr. Rice calculated plaintiff's past loss as $72,134.00 and his future loss as $147,653.00.

**<u>Defendant, Grand Isle Shipyards, Inc.:</u>**

Plaintiff alleges he was injured on or about August 1, 2012 aboard the MAD DOG

Platform which was owned by BP Exploration & Production, Inc.  Although plaintiff filed suit against other defendants, those defendants have since been dismissed.  Plaintiff first sued Grand Isle Shipyards on April 2, 2014. Accordingly, the Complaint, on its face, is prescribed and must be dismissed.

Plaintiff has alleged in his Complaint that he is a Jones Act Seaman.  Grand Isle Shipyards never employed plaintiff, did not own the platform on which plaintiff was allegedly injured, and, therefore, could have no liability under the Jones Act.  Further, the MAD DOG Platform is not a vessel for purposes of the General Maritime Law and/or Jones Act Law. Accordingly, plaintiff has no claim against GIS or alternatively, the Court lacks jurisdiction to hear this matter.

Plaintiff claims he was injured when he placed his hand in a pinch point beneath a pump he had been dispatched to repair.  GIS had no involvement whatsoever in that pump repair process, and, assuming plaintiff can assert a claim for which this Court has jurisdiction, which defendant specifically denies, plaintiff cannot prove that the conduct of GIS was a cause in fact of his injury. Further, plaintiff cannot prove that GIS owed any legal duty to him.

Alternatively, GIS contends the incident in question was solely caused by plaintiff's own negligence in one or more of the following manners, among others to be shown at trial:

a)      Placing his hand in a known pinch point.

b)      Failing to take adequate precautions to protect his safety.

c)      Placing his body inside a danger zone without receiving permission to be there.

d)      Failing to have the proper shaft clamps or other equipment to keep the pump from falling onto plaintiff's hand.

e)      Failing to look out for his safety and follow known safety rules.

## VII.
## UNCONTESTED MATERIAL FACTS:

1.      Plaintiff is a resident of the State of Louisiana.

2.      Plaintiff was employed by DXP at the time of his alleged accident.

3.      Plaintiff was aboard the BP MAD DOG Platform at the time of his alleged accident.

4.      Grand Isle Shipyards, Inc. was providing labor and services aboard the BP MAD DOG Platform at the time of his alleged accident.

5.      Plaintiff was employed by DXP and was working as an independent contractor for BP.

## VIII.
## CONTESTED ISSUES OF FACT:

1.      The facts and circumstances surrounding plaintiff's accident;

2.      Whether defendant, Grand Isle Shipyards, Inc., was negligent;

3.      The cause, nature, duration and extent of plaintiff's injuries;

4.      Plaintiff's medical prognosis;

5.      Whether plaintiff is able to return to full employment without restriction;

6.      The extent of plaintiff's economic loss;

7.      The extent of plaintiff's past and future medical expenses;

8.      The extent of plaintiff's general and special damages;

9.      The extent of  punitive damages to which plaintiff is entitled;

10.     Whether plaintiff was negligent and, if so, the extent of same;

11.     Whether plaintiff was injured on August 1, 2012;

12.     Whether Wesley Rozas and the other GIS workers allegedly involved in the task on the day of the incident were all "borrowed employees" of BP;

13.     Whether BP furnished all of the tools used by the GIS workers aboard the MAD DOG spar platform;

14.     Whether BP had the right to terminate the employment of the GIS workers aboard the MAD DOG spar platform;

15. Whether BP gave all work directions to the GIS workers aboard the MAD DOG spar platform;

16. Whether BP set the number of hours and, thus the pay, for the GIS workers aboard the MAD DOG spar platform;

17. Whether BP had the right to control all of the work activities of the GIS workers aboard the MAD DOG spar platform;

18. Whether BP established a lift plan and directed GIS workers as to specific participation expected of them in connection with that plan;

19. Whether the GIS workers complied fully with all of the directions given to them by the BP supervisor on the platform;

20. Whether the GIS workers complied fully with their obligations under the lift plan;

21. Whether the area where the incident happened was located behind a red flagged barricade signifying a danger zone;

22. Whether without permission, plaintiff entered the red flag danger area;

23. Whether plaintiff was specifically instructed not to touch the rigging by a BP supervisor prior to the incident, but violated those instructions;

24. Whether plaintiff placed his hand in a pinch point prior to the pump falling;

25. Whether plaintiff admits the GIS workers did everything asked of them and acknowledges they did not do anything which caused or contributed to his accident;

26. Whether the Court has no jurisdiction;

27. Whether the claim has prescribed;

28. Whether plaintiff has returned to work for his previous employer since the incident and is currently capable of earning as much or more than he was at the time of the incident;

29. Whether plaintiff knew he had Stop Work Authority but he did not exercise it prior to the accident;

30. Whether plaintiff knew to avoid placing his body parts in pinch points;

31. Whether after the incident plaintiff admitted the accident was caused by his own fault;

32. Whether plaintiff has more than thirty-five years experience as a pump mechanic;

33.    Whether plaintiff has admitted in his deposition that the GIS rigger did exactly as plaintiff had instructed him to do and that the pump was lifted safely in accordance with plaintiff's instructions;

34.    Whether on plaintiff's instructions, a GIS rigger lowered the pump to a point where it rested on a bearing retainer in the caisson;

35.    Whether at that time plaintiff knew the bearing retainer might not be able to support the weight of the pump;

36.    Whether the incident was caused by plaintiff's sole or partial fault in one or more of the following manners, among others, to be shown at trial

      a)      Placing his hand in a known pinch point.
      b)      Failing to use proper tools and equipment to safely accomplish his job.
      c)      Violating the lift plan.
      d)      Failing to follow specific instructions concerning safety.
      e)      Failing to order the proper lifting devices.
      f)      Placing his hand in a known pinch point.
      g)      Failing to exercise Stop Work Authority.
      h)      Giving improper instructions to personnel around him.
      i)      Failing to communicate with BP what he was doing at the time of the incident.
      j)      Failing to follow the BP lift plan;

37.    Whether the GIS employees on the MAD DOG spar at the time of the incident were borrowed employees of BP;

38.    Whether the accident was caused by the fault of others for whom GIS was not responsible, including BP, DXP, and Bishop Lifting Products, Inc.;

39.    Whether Bishop Lifting Products, Inc. was negligent in one or more of the following manners, among others to be shown at trial:

      a)      Developing a lifting plan that did not include all of the potential risks.
      b)      Failing to hold a proper JSA prior to the commencement of the lifting.
      c)      Failing to select an air hoist to perform the task.
      d)      Failing to ensure the proper lifting clamps were in place;

40.    Whether DXP was negligent in one or more of the following manners:

      a)      Failing to properly train plaintiff.
      b)      Failing to provide plaintiff with the lifting clamp or other tools he needed to safely perform his work.
      c)      Failing to ensure that plaintiff knew how to safely perform his job;

41.     Whether BP was negligent in one or more of the following manners among others to be shown at trial:

    a)    Developing a lifting plan that did not include all of the potential risks.
    b)    Failing to hold a proper JSA prior to the commencement of the lifting.
    c)    Failing to select an air hoist to perform the task.
    d)    Failing to ensure the proper lifting clamps were in place.
    e)    Failing to properly train plaintiff.
    f)    Failing to provide plaintiff with the lifting clamp or other tools he needed to safely perform his work.
    g)    Failing to ensure that plaintiff knew how to safely perform his job.
    h)    Failing to supervise plaintiff and others on the platform.
    i)    Failing to have proper safety devices available for plaintiff and others on the platform; and

42.     Any and all issues of law implicit in the Summary of Facts and Issues of Law.

## IX.
## CONTESTED ISSUES OF LAW:

1.     Whether defendant, Grand Isle Shipyards, Inc., was negligent in any way;

2.     Whether defendant, Grand Isle Shipyards, Inc., breached a duty of reasonable care owed to plaintiff;

3.     Whether defendant, Grand Isle Shipyards, Inc., failed to take any means or precautions for the safety of plaintiff;

4.     Whether defendant, Grand Isle Shipyards, Inc., failed to provide minimum safety requirements;

5.     Whether defendant, Grand Isle Shipyards, Inc., failed to provide adequate personnel for the job in question;

6.     Whether defendant, Grand Isle Shipyards, Inc., failed to provide adequate equipment;

7.     Whether the plaintiff was negligent;

8.     Whether plaintiff is entitled to punitive damages;

9.     Whether plaintiff's claim has prescribed;

10.     Whether plaintiff and other parties were negligent;

11.     Whether the GIS employees on the MAD DOG at the time of the incident were "borrowed employees" of BP;

12.     Whether GIS is tort immune;

13.    Whether this Court has jurisdiction to hear this matter; and

14.    All issues of law, implicit or explicit, in the above contested issues of law.

## X.
## EXHIBITS:

**Plaintiff, Rickey Wolz:**

(1)    BP Incident Report lasted modified August 19, 2012;

(2)    Minerals Management Service Incident Report dated August 23, 2012;

(3)    BP Incident Investigation Report including attachments dated October 4, 2012;

(4)    BP Incident Investigation Report dated November 16, 2012;

(5)    DOL-WC-1007 Form - Employer First Report of Injury/Illness, DXP Incident Review, OSHA Form 301-Injuries and Illnesses Incident Report, "Five Why" One Page Report and Root Cause Analysis dated August 6, 2012;

(6)    DOL Form LS-202 Employer's First Report of Injury including DXP Incident Review, DXP Post Incident Training, OSHA Form 301-Injuries and Illnesses Incident Report, "Five Why" One Page Report and Root Cause Analysis;

(7)    Written Statement of Barrett Best;

(8)    Typed Statement of Brent Broussard;

(9)    Written Statement of Unknown Witness;

(10)   Written Statement of Ricky McLemore;

(11)   Written Statement of Wesley Rozas;

(12)   Written Statement of Romy Arente GIS employee dated August 2, 2012;

(13)   Plaintiff's DXP Enterprises, Inc.'s personnel file;

(14)   Photographs of plaintiff's hand;

(15)   Post-Surgery photograph taken July 25, 2013;

(16)   Post-Surgery photos taken August 8, 2013;

(17)   Black and White Photographs provided by BP of the accident site;

(18)   Work Control Certificate 00283439 Permit and Risk Assessment Form provided by BP;

(19)     GIS L.I.F.E. Analysis Worksheets-WP-SEA for July 30- August 1, 2012;

(20)     Signature Page of Work Control Certificate 00283429 Permit and Cold Work Breaking Containment Live dated August 2, 2012;

(21)     DXP Pump Removal Quotation dated July 24, 2012;

(22)     GIS HSE Manual 2011;

(23)     DXP Enterprises, Inc. Safety Manual Handbook;

(24)     Relevant Portions of the Master Agreement between BP and DXP;

(25)     GIS Holdings, LLC Excess Commercial General Liability Coverage Policy No. XSGL-073295;

(26)     DXP Enterprises, Inc. Employee Handbook;

(27)     DXP Recommended Procedures and Practices for Fire Pump Removal Handbook;

(28)     Bishop Lifting Products Job Descriptions for Frederick Greer (Crane Technician) and Brent Broussard (Rigging Inspector and Crane Tech);

(29)     Social Security Administration Itemized Statement of Earnings for 1972-2012;

(30)     Internal Revenue Service Tax Returns for 2009-2013;

(31)     Certified medical records, including diagnostic tests and films of Dr. Jonathan Boraski, Westbank Plastic Surgery;

(32)     Certified medical records, including diagnostic tests and films of West Jefferson Medical Center;

(33)     Certified medical records, including diagnostic tests and films of Crescent City Anesthesia Services;

(34)     Certified medical records, including diagnostic tests and films of Magnolia Physical Therapy;

(35)     Certified medical records, including diagnostic tests and films of Concentra Medical Center; and

(36)     Certified pharmacy records from Walgreens.

**Defendant, Grand Isle Shipyards, Inc.:**

1)     Report of Seyler Favaloro.

2)     Report of Kenneth Boudreaux.

3)      Plaintiff's personnel file.

4)      Plaintiff's training records.

5)      Plaintiff's tax records.

6)      Photographs of the equipment and site.

7)      Time tickets showing work performed by persons on the platform.

8)      The lift plan developed by Bishop.

9)      DXP's written guidelines concerning the repair of the pump in question.

10)     Corporate deposition of DXP.

11)     Copy of the Complaint filed by plaintiff against GIS and the file stamp showing the date

        it was filed with the court.

12)     Employer's First Report of Injury of August 3, 2012.

13)     BP Incident Report: 2012-IR-4197582.

14)     Work Contract Certificate: 00283439 (BP-13 to BP-27).

15)     Copy of original WCC Permit no. 00283439, dated August 2, 2012.

16)     JSEA regarding WCC Permit no. 00283439, dated August 2, 2012.

17)     BP GoM S & OR Standard Lifting Operations Plan, dated August 2, 2012.

18)     Photographs of the Mad Dog Platform and pump assembly.

19)     DXP Recommended Procedures & Practices – Removal of Vertical Line Shaft Pump

        w/Hollow Shaft Motors or 2F Couplings (Solid Shaft).

20)     DXP Recommended Procedures & Practices – Firewall Pump Removal.

21)     DXP Fiberglass Column Pipe Installation Recommendations.

22)     DXP invoices and purchase orders.

23)     DXP Post Incident Training.

24)     DXP OSHA Form 301 Injury and Illness Report.

25)     DXP Five Way Report.

26)     DXP Root Cause Analysis.

27)     DXP Safety Meeting Attendance Rosters and Records.

28)     DXP Safety Manual.

29)     DXP Employee Handbook.

30)     DXP Business Ethics Policy Agreement.

31)     DXP Drug and Alcohol Contraband Policy.

32)     SafeGulf Course Syllabus.

33)     Plaintiff's yearly job performance reviews at DXP and SEPCO.

34)     ITT Goulds Pumps Manual – Installation Operation and Maintenance Manual.

35)     DXP personnel and payroll records of Rickey Wolz.

36)     Plaintiff's W-2 records.

37)     Plaintiff's Social Security earnings history.

38)     Plaintiff's employment records.

39)     All documents produced by DXP in response to subpoenas from BP.

40)     All documents produced by DXP in response to subpoena from GIS.

41)     Exhibits attached to the deposition of any witness unavailable to testify at trial.

42)     Exhibits attached to the deposition of plaintiff.

43)     Exhibits attached to the deposition of Lawrence Harnahan.

44)     All documents produced by plaintiff in discovery.

45)     Plaintiff's answers and responses to defendant's written discovery.

46)     All documents produced by BP in discovery.

47)     All exhibits attached to the deposition of any witness.

48)     Plaintiff's medical records.

49)     Records pertaining to plaintiff's LHWCA compensation and medical benefits.

50)     Records pertaining to plaintiff's disability benefits.

51)     Any exhibit listed by any other party.

Grand Isle Shipyards reserves the right to amend and/or supplement the above exhibit list as information becomes available.

## OBJECTED TO EXHIBITS:

**Plaintiff, Rickey Wolz:**

1)     Report of Seyler Favaloro – Plaintiff objects as reports of testifying experts are inadmissible;

2)     Report of Kenneth Boudreaux - Plaintiff objects as reports of testifying experts are inadmissible;

3)     Corporate deposition of DXP – Plaintiff objects to the extent Larry Harnahan testifies live at trial;

4)     DXP Business Ethics Policy Agreement - Plaintiff objects as irrelevant;

5)     DXP Drug and Alcohol Contraband Policy- Plaintiff objects as irrelevant;

6)     SafeGulf Course Syllabus – Plaintiff objects as not produced;

7)     Plaintiff's employment records – Plaintiff objects as vague and he is unable to identify what defendant intends to submit;

**Defendant, Grand Isle Shipyards, Inc.:**

GIS objects to the following exhibits:

1.     BP Incident report - objected to on the grounds of hearsay.

2.    Minerals Management Service Incident report - objected to on the grounds of hearsay.  In addition, this report has never been produced by plaintiff.

3.    BP Incident Investigation Report including attachments dated October 4, 2012 - objected to on the grounds of hearsay.

4.    BP Incident Investigation Report dated November 16, 2012 - objected to on the grounds of hearsay.

5.    DOL-WC-1007 Form – Employer First Report of Injury/Illness, DXP Incident Review, OSHA Form 301-Injuries and Illnesses Incident Report, "Five Why" One Page Report and Root Cause Analysis dated August 6, 2012 - objected to on the grounds of hearsay.

6.    DOL Form LS-202 Employer's First Report of Injury including DXP Incident Review, DXP Post Incident Training, OSHA Form 301-Injuries and Illnesses Incident Report, "Five Why" One Page Report and Root Cause Analysis = objected to on the grounds of hearsay.

7.    Written statement of Barrett Best - objected to on the grounds of hearsay.

8.    Typed statement of Brent Broussard - objected to on the grounds of hearsay.

9.    Written statement of unknown witness - objected to on the grounds of hearsay.

10.    Written statement of Ricky McLemore - objected to on the grounds of hearsay.

11.    Written statement of Wesley Rozas - objected to on the grounds of hearsay.

12.    Written statement of Romy Arente GIS employee dated August 2, 2012 - objected to on the grounds of hearsay.

13.    Plaintiff's DXP Enterprises, Inc.'s personnel file - objected to on the grounds of hearsay.

14.    Photographs of plaintiff's hand - objected to on the grounds of relevance.  In addition, the potential prejudice far outweighs any probative value.

15.    Post-surgery photographs taken July 25, 2013 - objected to on the grounds of hearsay.  In addition, the potential prejudice far outweighs and probative value.

16.    Post-surgery photos taken August 8, 2013 - objected to on the grounds of hearsay. In addition, the potential prejudice far outweighs and probative value.

17.    Black and white photographs provided by BP of the accident site - objected to on the grounds of hearsay.

18.    GIS L.I.F.E. Analysis Worksheets-WP-SEA for July 30 – August 1, 2012 - objected to on the grounds of hearsay.

19.    Signature Page of Work Control Certificate 00283429 Permit and Cold Work Breaking Containment Live dated August 2, 2012 - objected to on the grounds of hearsay.

20.    DXP Pump Removal Quotation dated July 24, 2012 - objected to on the grounds of relevance.

21.    GIS HSE Manual 2011 - objected to on the grounds of relevance.

22.    GIS Holdings, LLC Excess Commercial General Liability Coverage Policy - objected to on the grounds of relevance.

23.    Certified medical records, including diagnostic tests and films of Dr. Jonathan Boraski, Westbank Plastic Surgery - objected to on the grounds of hearsay.

24.    Certified medical records, including diagnostic tests and films of West Jefferson Medical Center - objected to on the grounds of hearsay.

25.    Certified medical records, including diagnostic tests and films of Crescent City Anesthesia Services - objected to on the grounds of hearsay.

26.    Certified medical records, including diagnostic tests and films of Magnolia Physical Therapy - objected to on the grounds of hearsay.

27.    Certified medical records, including diagnostic tests and films of Concentra Medical Center - objected to on the grounds of hearsay.

28.    Certified pharmacy records from Walgreens - objected to on the grounds of hearsay.

Exhibit Lists were filed in accordance with the Federal Rules of Civil Procedure and prior Court Orders.

## XI.
## DEPOSITION TESTIMONY:

All parties reserve the right to offer into evidence the deposition of any witness beyond the subpoena power of this Honorable Court and/or any other witness unavailable for trial, or any

witness whose deposition has been taken in this matter, as permitted by the Federal Rules of Civil Procedure.

**Plaintiff, Rickey Wolz:**

Plaintiff will introduce into evidence the depositions of Frederick Greer, Andrew Koblenzer, Tommy Allen Turnage, and Louis Verret.

**Defendant, Grand Isle Shipyards, Inc.:**

1)      Deposition testimony of Frederick Greer.

2)      Deposition testimony of any witness not available to testify at trial.

## XII.
## CHARTS, GRAPHS, MODELS, ETC.:

All parties reserve the right to use charts, graphs, drawings, models, photographs, and other materials during argument.

**Plaintiff, Rickey Wolz:**

Plaintiff will use blowups of photographs of plaintiff's hand.  Plaintiff may also rely upon blowups of any and all exhibits as well as enlargements of his opening and closing arguments and defendant's openings for demonstrative purposes.  These exhibits will be made available for inspection by counsel for defendant upon reasonable notice prior to trial.

**Defendant, Grand Isle Shipyards, Inc.:**

GIS may use sketches or drawings of the pump and the lifting apparatus together with blow-ups of photographs

## XIII.
## WITNESS LIST:

**Plaintiff, Rickey Wolz:**

**WILL CALL:**

1. Rickey Wolz- fact witness to testify concerning all facts surrounding the accident, his medical treatment, his damages and all other issues;

2. Cynthia Grimes Wolz - fact witness to discuss affect accident has had on plaintiff including physically, emotionally, and financially;

3. Allen Turnage, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

4. Louis Verrett, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

5. Marty Colvin, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

6. Andrew Koblenzer, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

7. Martin Sanchez, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and

circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

8. Robert Kretzer, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

9. Trent Barron, BP Exploration and Production, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

10. Wesley Rozas, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

11. Ricky McLemore, formerly of Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

12. Romy Arante, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

13. Lawrence Hanrahan , DXP Enterprises, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

14. Barrett Best, Danos & Curole – fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

15. Frederick Greer, Bishop Lifting – fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

16. Brent Broussard, Bishop Lifting – fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

17. Dr. Jonathan Boraski, Westbank Plastic Surgery - Medical Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issue concerning plaintiff's medical treatment or physical condition;

18. Lauren Manna, DPT Magnolia Physical Therapy, - Medical Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issue concerning plaintiff's medical treatment or physical condition;

19. Dr. Cornelius E. Gorman - vocational rehabilitation expert to provide expert testimony concerning loss of wage earning capacity sustained by plaintiff, plaintiff's vocational assessment for future employment including areas of employment and plaintiff's wage earning capacity in light of his injury, surgery, background, area in which he lives and physical limitations;

20. Dr. G. Randolph Rice -  expert economist to provide expert testimony concerning the present day value of plaintiff's loss of past and future wages, fringe benefits and other financial losses as a result of plaintiff's injury and subsequent restrictions;

21. Robert E. Borison - marine safety expert to provide expert testimony concerning all issues of negligence, liability, dangerous acts, actions below the standard of care in the industry and all issues of negligence or liability on the part of the defendants as well as any alleged comparative fault on the part of plaintiff.

## MAY CALL:

1. Wade Hebert, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

2. Josean Irizarry Almovodar, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

3. Armondo Castillo, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

4. Jesus Pacheco, Jr., Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the

plaintiff, his accident, and his damages;

5. Frankie Price, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

6. Raul Ramos, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

7. Edwin Rodriguez, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

8. Renato Roman, Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

9. Jose Villareal; Grand Isle Shipyards, Inc. – fact witness to testify concerning the facts and circumstances surrounding the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

10. A Representative of West Jefferson Medical Center, - Medical Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issue concerning plaintiff's medical treatment or physical condition;

11. A Representative of Crescent City Anesthesia Services, - Medical Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issue concerning plaintiff's medical treatment or physical condition;

12. A Representative of Concentra Medical Center, - Medical Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issue concerning plaintiff's medical treatment or physical condition.

**Defendant, Grand Isle Shipyards, Inc.:**

GIS may call one or more of the following witnesses at trial:

1) Rickey Wolz, plaintiff - 205 Constellation Drive, Slidell, Louisiana 70458.

2) Andrew Koblenzer, BP Manager, 3 Emery Lane, Dover, New Hampshire, 03802 – to testify concerning repair of the pump, supervision of GIS employees, the lift plan, BP's Root Cause Analysis, and other facts concerning the accident.

3) Lawrence Hanrahan, DXP Manager, 502 East Blue Jay Court, Slidell, Louisiana, 70461 – to testify concerning DXP's written guidelines, plaintiff's employment file, DXP records, plaintiff's return to work, voluntary decision to change jobs, and to impeach aspects of plaintiff's deposition.

4) Allen Turnage, BP Maintenance Issuing Authority, 1029 Pecan Drive, Fernwood, Mississippi 39635 – to testify concerning the daily activities on the platform and the instructions given to plaintiff and others, as well as facts and circumstances surrounding the lifting plan and the accident.

5) Louis Verret, BP Maintenance Supervisor, 7706 Beaver Glen Court, Baytown, Texas 77521 - to testify concerning the daily activities on the platform and the instructions given to plaintiff and others, as well as facts and circumstances surrounding the lifting plan and the accident.

6) Frederick Greer, Bishop Lifting, 7374 Johnson Road, Orange, Texas 77632 – to testify concerning the lift plan and considerations taken into account in developing it and implementation of policies.

7) Wesley Rozas, GIS Supervisor, 451 Brassette Lane, Cottonport – to testify concerning his activities concerning his activities on the date of the incident.

8) Robert Kretzer, Maintenance Team Leader, 108 La Rue Christ Roi, Carencro, Louisiana – to testify concerning the lift plan, pre-accident safety meetings, activities of plaintiff and others on board, and to confirm that the GIS riggers were

doing exactly what was expected of them in a safe fashion.

9)     Mike Smith, mechanic, 132 L Robinson Road, Hineston, Louisiana – to testify concerning statements made to plaintiff to avoid touching the rigging, to testify concerning connection of the chain fall and nylon strap prior to the incident, and as to other factual issues related to this case.

10)    Carla Seyler, Vocational Rehabilitation Expert, 1615 Poydras Street, Suite 1040, New Orleans, Louisiana - expert to testify in accordance with her vocational rehabilitation report.

11)    Kenneth Boudreaux, Ph.D., Economist, 1424 Bordeaux Street, New Orleans, Louisiana – expert to testify in accordance with his forensic economic evaluation to the effect that plaintiff has no wage loss claim.

12)    Any witness listed by plaintiff.

Witness Lists were filed in accordance with the Federal Rules of Civil Procedure and prior Court Orders.

## XIV.
## JURY/NON-JURY STATEMENT:

This matter is a jury case.  The jury trial is applicable to all aspects of the case.  Proposed jury instructions, special jury interrogatories, trial memorandum, and any special questions that the Court is asked to put to prospective jurors on voir dire shall be electronically filed with the Court not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

## XV.
## LIABILITY:

**Plaintiff, Rickey Wolz:**

Plaintiff suggests that the issue of liability not be tried separately from that of quantum.

**Defendant, Grand Isle Shipyards, Inc.:**

Nothing submitted.

## XVI.

**OTHER MATTERS:**

The parties are unaware at this time of any other matters that might expedite a disposition of this case.

**XVII.**
**TRIAL:**

Trial shall commence on April 13, 2015 at 8:30 a.m.  It is estimated that the trial of this matter will last four (4) days.

**XVIII.**
**PRE-TRIAL ORDER STATEMENT:**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**XIX.**
**POSSIBILITY OF SETTLEMENT:**

Possibility of settlement of this case was not considered.  A settlement conference is scheduled for April 8, 2015.

**XX.**
**SIGNATURES**:

New Orleans, Louisiana, this _____ day of March, 2015.

_____
UNITED STATES DISTRICT COURT JUDGE

Respectfully Submitted:

*/s/ Tammy D. Harris*
**TIMOTHY J. YOUNG (#22677)**

**TAMMY D. HARRIS (#29896)**
**MEGAN C. MISKO (29803)**
THE YOUNG FIRM
400 Poydras St., Suite 2090
New Orleans, LA 70130
Telephone:  504-680-4100
Fax:  504-680-4101
***Attorneys for Plaintiff, Rickey Wolz***


**REICH, ALBUM & PLUNKETT, L.L.C.**

*/s/ Robert S. Reich*
**ROBERT S. REICH, T.A. (#11163)**
**DANIEL E. LEVY, ESQ. (#          )**
3850 N. Causeway Boulevard
1000 Lakeway Two
Metairie, LA 70002
Telephone: (504) 830-3999
Facsimile: (504) 830-3950
***Attorneys for Grand Isle Shipyards, Inc.***